## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RICK CLARK,** | ) | |
| **THOMAS SANDERS, and** | ) | |
| **KARLTON FERRELL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:11-CV-01124-GPM-SCW** |
| | ) | |
| **METRO EAST INDUSTRIES, INC.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs Rick Clark ("Mr. Clark"), Thomas Sanders ("Mr. Sanders"), and Karlton Ferrell ("Mr. Ferrell") (collectively, "Plaintiffs"), by the undersigned attorneys, respectfully bring this Amended Complaint against Defendant Metro East Industries, Inc. ("Defendant") and state as follows:

## FACTUAL BACKGROUND

### I. PARTIES

1. Mr. Clark is a natural person and a resident of the state of Illinois.

2. Mr. Sanders is a natural person and a resident of the state of Illinois.

3. Mr. Clark and Mr. Sanders are and have been employees of Defendant as that term is defined under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, ("Title VII") and the Illinois Human Rights Act, 775 I.L.C.S. 5/2-101 ("IHRA").

4. Mr. Clark and Mr. Sanders are African American males, and are members of a protected class.

5. Mr. Ferrell is a natural person and a resident of the state of Illinois.

6.   Mr. Ferrell was an employee of Defendant as that term is defined under Title VII and the IHRA, from approximately June 2004 until June 2010.

7.   Mr. Ferrell is an African American male, and is a member of a protected class.

8.   Defendant is a privately held corporation, with its principal place of business in East St. Louis, Illinois, St. Clair County, located at 3126 Old Missouri Avenue, East St. Louis, IL 62205.  It conducts railcar and locomotive repair and maintenance.

9.   Defendant is an employer as that term is defined by Title VII and the IHRA, and at all times has employed 15 or more employees.

## II. JURISDICTION AND VENUE

10.   This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. § 1981, and the Illinois Human Rights Act, 775 I.L.C.S. 5/2-101.

11.   Jurisdiction is proper in this Court under 28 U.S.C. § 1331, and venue is proper under 28 U.S.C. § 1391(b).

12.   Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## III. ADMINISTRATIVE PREREQUISITES

13.   Plaintiffs timely filed charges of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights for discrimination based on race.  Copies of the charges are attached hereto, along with the original federal court complaint, as Exhibit 1.

14.   The EEOC issued Notice of Right to Sue letters to Plaintiffs.

15. Plaintiffs timely filed their Complaint in the United States District Court for the Southern District of Illinois within 90 days of receiving their Right to Sue letters. A copy of the original federal court complaint is attached hereto as Exhibit 1.

16. All administrative prerequisites under Title VII and the IHRA have been satisfied.

### IV. FACTS APPLICABLE TO ALL COUNTS

17. Plaintiffs are African American males, and are members of a class protected by Title VII and the IHRA.

18. Mr. Clark is employed by Defendant as a Utility Specialist I, which entails general locomotive maintenance tasks, including repairing switches, floors, and air conditioning units.

19. Mr. Sanders is employed by Defendant as a Utility Specialist IV, whose duties are largely the same as Mr. Clark's. In the past, Mr. Sanders was also responsible for janitorial tasks, including general maintenance and cleaning of the facility.

20. During his employment with Defendant, Mr. Ferrell worked as an Electrician.

21. Throughout their employment with Defendant, Plaintiffs have performed and continue to perform to Defendant's legitimate expectations.

22. Plaintiffs have been, and continue to be, subjected to frequent, severe, and offensive conduct as a result of their race, creating a hostile work environment in violation of Title VII and the IHRA.

23. This hostility is and was demonstrated through pervasive discrete and cumulative acts of racial harassment.

24. Throughout the course of Plaintiffs' employment, they encountered, and continue to encounter, numerous racial slurs, including the word "nigger" spoken by other employees

and repeatedly written on the bathroom walls and other locations throughout Defendant's facility.

25. When told of the racial slurs written on the bathroom walls, Defendant, through its agents and employees, forced Mr. Sanders to clean the walls because of his race. Shortly after cleaning, the racial slurs would reappear. Upon information and belief, this pattern continued for years.

26. Defendant was aware of these slurs, and refused to investigate or discipline the employees responsible for writing them.

27. On or about March 23, 2010, a white employee of Defendant's hung a noose in clear view of Plaintiffs and other employees. Several employees, including Plaintiffs, witnessed the noose hanging at Defendant's facility. Photographs of the noose are attached as Exhibit 2.

28. Robley McIntosh, a former Caucasian employee, openly admitted to hanging the noose. Mr. McIntosh stated that he had placed approximately 40 other nooses around Defendant's facility at various times throughout his employment.

29. Plaintiffs and other employees complained about the noose to their supervisor, Wade Clavenger. Mr. Clavenger also personally witnessed the noose.

30. Defendant was aware of Mr. McIntosh's behavior, and never disciplined Mr. McIntosh.

31. When Plaintiffs and other employees asked why Mr. McIntosh was not disciplined, despite his clear admission, Mr. Clavenger stated that he did not know how to handle the situation "because he didn't grow up around black people." Mr. Clavenger also asked Plaintiffs "why are you so sensitive?" and stated that he didn't think Mr. McIntosh meant anything by hanging the noose.

32. On or about December 2010, graffiti drawings of monkeys were discovered on the sides of trains parked in Defendant's yard. Upon information and belief, Defendant did not investigate the incident, nor did they offer any response. A photograph of the graffiti is attached as Exhibit 3.

33. On or about January 18, 2011, another Caucasian employee, James Halgren, used the word "nigger" in front of Mr. Clark. Upon information and belief, Mr. Halgren was never disciplined for his actions.

34. On or about January 11, 2012, Frank Johnson, a Caucasian supervisor, walked into a room where Mr. Clark and another black employee, Jervis White, were talking. Mr. Johnson told Mr. Clark and Mr. White that "you two is like two monkeys fucking a football."

35. Mr. Clark complained to Mr. Clavenger. Mr. Clavenger insisted that Mr. Johnson "didn't mean anything by it," and refused to discipline Mr. Johnson.

36. During the summer of 2012, a Caucasian employee, Thomas Jaeger, asked another employee "why don't you put bleach in the Gatorade to make the black people white?" Upon information and belief, Mr. Jaeger was never disciplined.

37. As recently as December 2012, trains that had been parked on Defendant's property were marked with racial slurs, including the phrase "Bitch Ass Niggas." Upon information and belief, Defendant has not investigated these incidents, nor has it disciplined those responsible. A photograph of the graffiti is attached as Exhibit 4.

38. Numerous other incidents of racial harassment have occurred and continue to occur.

39. Plaintiffs were and are subject to different terms and conditions of employment than other similarly-situated employees outside of their protected class.

40. Plaintiffs have suffered, and continue to suffer, pecuniary loss, ridicule, harassment, fear, and emotional pain as a result of Defendant's treatment.

41. Plaintiffs repeatedly complained to their supervisors of their treatment. Defendant did not take any steps to rectify these offensive violations of Plaintiffs' federally- and state-protected rights.

## COUNT I

### (Violation of Title VII and Section 1981 – Racial Harassment)

42. Plaintiffs incorporate paragraphs 1-41 of this Amended Complaint as if set forth fully herein.

43. The conduct described above constitutes unlawful discrimination against Plaintiffs because of their race in violation of Title VII and 42 U.S.C. § 1981.

44. Defendant is responsible for creating and maintaining an environment which is racially hostile to African American employees, and it knew or recklessly ignored the fact that these actions violated Plaintiffs' federally protected rights.

45. Plaintiffs suffered harassment based on their membership in a protected class as African Americans.

46. Defendant created a working environment that was both subjectively and objectively offensive to Plaintiffs by allowing and encouraging the regular use of racial epithets, discriminatory graffiti, and the hanging of nooses around Defendant's property. Defendant also treats Plaintiffs differently as a result of their race, and refuses to appropriately deal with, or even investigate, repeated and ongoing instances of these harassing behaviors.

47. Defendant's conduct was both severe and pervasive. Defendant allowed the hanging of nooses around the property, permitted the verbal and written use of the word "nigger" without consequence, allowed and encouraged a work environment rife with discriminatory language, and forced Plaintiffs to clean racially insensitive graffiti from the bathroom walls. Defendant failed to take any remedial action when confronted with repeated instances of racial harassment, and this harassment is ongoing.

48. On several occasions, Plaintiffs were called "niggers," were told they look like "two monkeys fucking a football," and were exposed to nooses, drawings depicting monkeys, and numerous other racial slurs and taunts.

49. Plaintiffs complained to their supervisors of Defendant's conduct, and no investigation or action was taken, even after Mr. McIntosh, a white employee, admitted to hanging more than 40 nooses.

50. When questioned about why no action was taken, Mr. Clavenger stated that he didn't know how to handle the situation because he "didn't grow up around black people." He also accused Plaintiffs of being too sensitive.

51. Upon information and belief, Plaintiffs were passed over for promotions as a result of Defendant's racial discrimination and harassment.

52. Defendant was and is aware of these violations, and has refused to take corrective action in response to repeated violations of Plaintiffs' federally-protected rights.

53. Defendant's conduct has continued for years, and is ongoing.

54. Defendant, by and through its agents and employees, took adverse employment actions against Plaintiffs due to impermissible discrimination, and knowingly and intentionally violated Title VII.

55. Defendant's violations of Title VII, by and through its agents and employees, were committed knowingly and intentionally, in utter disregard of the Plaintiffs' rights under federal law. An award of punitive damages is warranted, of considerable and exemplary extent, as a result of Defendant's statutory violations.

56. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and continue to suffer pecuniary loss, emotional pain, suffering, mental anguish, harassment, fear, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT II

### (Violation of the Illinois Human Rights Act – Racial Harassment)

57. Plaintiffs incorporate paragraphs 1-56 of this Amended Complaint as if set forth fully herein.

58. The conduct described above constitutes unlawful discrimination against Plaintiffs because of their race, in violation of the IHRA.

59. Defendant discriminated against Plaintiffs with respect to promotions and the terms, privileges and conditions of their employment because of their African-American race.

60. Defendant's violations of the IHRA, by and through their agents and employees, were committed knowingly and intentionally, in utter disregard of the Plaintiffs' rights under the statute.

61. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and continue to suffer pecuniary loss, emotional pain, suffering, mental anguish, harassment, fear, loss of enjoyment of life, and other non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully pray this Honorable Court to:

a) Compensate and make Plaintiffs whole for all earnings and wages, including compensatory damages, back pay, prejudgment interest, and benefits they would have received but for the discriminatory practices of Defendant;

b) Order Defendant to establish and implement a Diversity Training Program to educate current and future employees of the need for diversity awareness and responsibility in the workplace;

c) Order Defendant to cease all further discrimination and harassment;

d) Award Plaintiffs punitive damages for Defendant's willful and wanton conduct;

e) Award Plaintiffs the costs and expenses of this action, including reasonable attorneys' fees; and

f) Grant such other relief as this Honorable Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Paul R. Klein
     Paul R. Klein, #6306343
     R. Nelson Williams, #6307334
     One U.S. Bank Plaza
     St. Louis, Missouri  63101
     314-552-6000
     FAX 314-552-7000
     pklein@thompsoncoburn.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I caused a copy of the forgoing to be served on:

By: /s/ Paul R. Klein